ALTON D. WHITE V. STATE OF NEBRASKA.

FILED JANUARY 9, 1911.    No. 16,715.

1. **Intoxicating Liquors:** ILLEGAL SALES: EVIDENCE. In a prosecution for selling intoxicating liquors in violation of law, it was charged in the information that the accused did, on a date named, unlawfully sell to a person designated an intoxicating and spirituous liquor, to wit, giving the name or quality of the liquor alleged to have been sold. The proof showed the sales, that though labeled and branded by another name, which was for the purpose of deception, the liquor contained to a large degree the kind and quality alleged in the information, and that it was intoxicating. *Held,* That the evidence sufficiently sustained the averments of the information under the provisions of section 11, ch. 50, Comp. St. 1909.

2. **Criminal Law:** SEPARATE OFFENSES: SENTENCE. Under the rule stated in *Hans v. State*, 50 Neb. 150, it is competent for the prosecution to allege and prove the keeping for the purpose of unlawful sale, in separate counts, several different kinds of liquors, thus forming distinct counts and charges, and upon a verdict of guilty upon each count a separate sentence for each may be imposed.

3. ————: INSTRUCTIONS. The instructions given to a jury upon a trial are to be considered as a whole and construed together. If

15

when so considered and construed they present no erroneous state-
ments of law, the fact that an isolated instruction may be
indefinite or incomplete will not be considered prejudically erro-
neous if the law is fully and correctly stated in other instructions.

ERROR to the district court for Boone county: JAMES R.
HANNA, JUDGE. *Affirmed.*

*C. E. Spear, F. J. Mack* and *T. J. Doyle,* for plaintiff in
error.

*William T. Thompson, Attorney General, George W.
Ayres* and *O. M. Needham, contra.*

REESE, C. J.

Plaintiff in error was prosecuted in the district court
for Boone county for 14 violations of the liquor laws of
this state. The jury found him guilty on each of the 14
counts of the information, and a fine of $250 on each
count was imposed. The cause is brought to this court by
proceedings in error for review. Plaintiff in error was
engaged in the drug business at St. Edwards, in said
county, and, as disclosed by evidence received by the court
after verdict, has been frequently prosecuted and fined for
similar violations of the liquor laws of the state. The
principal contention is that the verdict of the jury is not
supported by sufficient evidence. This will require a brief
statement of the evidence bearing upon each count of the
information. The bill of exceptions has been carefully
examined, but owing to the length of the information, and
extent of the evidence, our discussion of the facts must
of necessity be limited. There is no claim that the ac-
cused had either a license or permit to sell intoxicating
liquor.

By section 11, ch. 50, Comp. St. 1909, it is made a misde-
meanor, punishable by a fine of not less than $100 nor
more than $500, for any person to sell without license or
permit any "malt, spirituous, or vinous liquors, or any
intoxicating drinks," etc. In each of the counts for sell-

ing, the information charges the sale of "intoxicating" liquor, and which is followed by the general statement of the kind or quality of the liquor alleged to have been sold. It appears from the evidence that many of the drinks were disposed of under fictitious names printed on labels pasted by the manufacturer upon the bottles, the evident purpose of which was to deceive, and under which the liquor could be sold but without its real quality being known until drank and followed by intoxication. Some of the counts charge the unlawful sale of "intoxicating and spirituous liquor, to wit, whisky," while others, following the same language, charge the sale of "Meta Malta," "Mead's Malt," "Queen Bee," "Krug's Life Malt," etc. The return and testimony of the sheriff show that under a search warrant and search of the premises he found "Whisky," "Cherry Creek," "Meta Malta (branded 'intoxicating')," "Hawkeye Bitters," and "Krug's Life Malt," all or nearly all of which were sufficiently proved to be whisky, or to contain whisky to a great extent. Under these circumstances the prosecutor alleged that the liquors sold were "intoxicating liquors."

The first count in the information charges that on or about the 10th day of March, 1909, the accused sold to William Schuler "intoxicating and spirituous liquor, to wit, whisky." Schuler was called as a witness, and testified that about that time he was in the drug store of plaintiff in error and that he "bought stuff there to drink," that he "got some stuff there that was supposed to be good to drink, I guess 75 cents a pint or $1.50 for a quart"; that he had drunk liquor ever since he knew anybody; that he drank a part of the liquor so purchased; that it was spirituous and intoxicating; and that he purchased it of plaintiff in error. On the cross-examination, with reference to another date and transaction, the witness was asked what he meant by spirituous liquor. His answer was: "Spiritual liquor." Whether this answer was prompted by ignorance, or a disposition to be "smart" and bandy words with the attorney, is not clear. He

stated what he meant was that the liquor was "as near pure as I could get at that time," and in another answer he said: "Getting pretty close to the pure stuff." That his idea was that "malt liquor is a poor quality of liquor, and spirituous is a good quality." On re-examination he testified that the liquors he obtained at the drug store of plaintiff in error, as testified to by him, tasted like whisky and contained whisky in them. This was sufficient to justify a submission of the question to the jury, and, although contradicted by plaintiff in error, the jury being satisfied beyond a reasonable doubt, the verdict as to that count would have to stand. The testimony of the same witness as bearing upon the same charges contained in counts 2, 3, 4 and 5 was practically to the same effect, except that in some cases it was more definite and positive as to some of the liquors purchased. It is not deemed necessary to pursue this inquiry further. The sixth count was sustained by the testimony of Ed Trosper, who stated upon the stand that about the time alleged he bought drinks at the place of business of plaintiff in error that tasted like "skee," by which he afterward testified he meant "whisky"; that it was intoxicating if taken in sufficient quantities, and that it was spirituous liquor. The seventh, eighth and ninth counts were also sustained in the same way. The tenth count was sufficiently sustained by the witness Gumm, who testified that he purchased the drinks on or about the date named; that it would intoxicate; that it tasted like whisky; that he would call it poor whisky; that he was familiar with the taste and effect of that liquor, and that it intoxicated him. The eleventh count was clearly proved if the witness was telling the truth, and of that the jury were the sole judges. The twelfth count was also sustained by Gumm. He stated that on or about the date named he called for "Queen Bee" and purchased it of plaintiff in error; that he drank it; that it was intoxicating, he becoming intoxicated on it; that it tasted like, and must have contained, whisky.

The testimony of these witnesses, while in some degree convincing, is not so clear and positive on some features as might be desired, as it clearly appears that they avoided stating in clear and direct language what they knew to be the truth, seeming rather to evade making direct and positive answers. But on the further progress of the trial the identical receptacles and labels taken from the store of plaintiff in error and corresponding with the liquors described by the witnesses were presented, the liquors tasted and tested in the presence of the jury, so that there could be no rational question as to their spirituous and intoxicating quality, whisky being an essential, if not preponderating, ingredient. We find no sufficient grounds to question the correctness of the verdict upon each of the 12 counts. It is true that plaintiff in error upon the stand contradicted many of the material statements of the witnesses in positive and direct terms, and that witnesses were called who testified that their reputations for truth and veracity were bad, but this presented questions of fact for solution by the jury, and they have passed upon them, and, there being enough to sustain the verdict, their finding must be final.

As to the thirteenth and fourteenth counts of the information, a more serious question is presented. The thirteenth count charges plaintiff in error with unlawfully keeping in his possession for the purpose of sale "intoxicating and malt liquor, to wit, 'Krug's Life Malt,'" and the fourteenth count charges that at the same time and place he kept for the same purpose "intoxicating and spirituous liquor, to wit, whisky," thus separating the quality of liquors alleged to have been kept, and presenting the question of two crimes, whereas it is contended that, if there were any ground for such charge, but one offense could be properly charged and a prosecution based thereon. Section 20, ch. 50, Comp. St. 1909, provides: "It shall be unlawful for any person to keep for the purpose of sale without license any malt, spirituous, or vinous liquors in the state of Nebraska, and any person or per-

sons who shall be found in possession of any intoxicating liquors in this state, with the intention of disposing of the same without license in violation of this chapter, shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined," etc. It has been the understanding of the writer that the different kinds of liquor, or any number of kinds, so kept for sale, constituted but one offense, that of keeping liquors for the purpose of sale in violation of law. We find, however, that this identical question was before this court in *Hans v. State*, 50 Neb. 150, and it was there squarely held by a unanimous court that the liquors might be segregated as to quality and two offenses charged, the court saying: "The sixteenth count of the information charges the unlawful keeping for the purpose of sale without a license certain vinous liquors, consisting of a half barrel of 'Raspberry Wine,' and the seventeenth count charges the keeping for the same unlawful purpose certain spirituous liquors, consisting of two cases of 'Tom and Jerry.' Therefore two separate and distinct offenses are alleged, and, the defendant having been convicted of both, a separate sentence for each within the limit fixed by section 11, ch. 50, Comp. St., was properly imposed for each offense." This having been declared to be the law, we are not inclined to reinvestigate the subject, and will abide by it.

Complaint is made of the tenth instruction given by the trial court. It is as follows: "You are instructed that if you find, beyond a reasonable doubt, that the defendant made any of the sales of liquors, as charged in any of the counts of the information, or that he was keeping for the purpose of unlawful sale any of the liquors as charged in the information, it is sufficient if the state prove, beyond a reasonable doubt, that any of such liquors so sold or so kept for the purpose of unlawful sale were either malt, spirituous or intoxicating liquors." The criticism upon this instruction is that it is indefinite, that "it says one thing and means another," and that, "if whisky is alleged, the proof of any kind of malt liquor is

sufficient." If this instruction stood alone, we might hes-
itate to approve it, but, when considered in connection
with other instructions given, we are unable to see where
it could have been misleading. By the fifth instruction
the jury were told that, in order to sustain a conviction
upon any count, the "truth of every material allegation
contained in such count of said information must be
proved to the satisfaction of the jury beyond a reasonable
doubt"; and in the ninth instruction that, before the jury
could "find the defendant guilty of any or all the counts
contained in the information, the state will have to prove
beyond a reasonable doubt every material averment of
such count or counts of the information"; and in the
thirteenth instruction that if the jury "fail to find that
the allegations in any or all of the several counts of the
information have been established beyond a reasonable
doubt to your satisfaction, as defined in these instructions,
you should then find the defendant not guilty as to any
or all of said counts of said information, as to which you
find the proof has failed, as defined in these instructions."
When these instructions are considered together, it does
not appear that the tenth could have been misunderstood
by the jury. It seems clear that they were informed that
the guilt of plaintiff in error of the violation of the law as
charged in each count must be established or the accused
could not be found guilty of the charge contained in such
count.

It is strongly urged in the brief of plaintiff in error
that the proof does not sustain the charges as to the
quality of the liquors sold; that an indictment charging
the unlawful sale of whisky is not supported by
proof of the sale of other intoxicating liquors, as decided
in *State v. Hesner,* 55 Ia. 494. This may be conceded as
being the law, as held in *Weinandt v. State,* 80 Neb. 161,
that "it is a well-recognized principle that proof of un-
lawful sales of whisky will not sustain a charge of un-
lawful sale of beer, or the reverse," and yet not call for
a reversal of the judgment in this case, owing to the

language of the statute above quoted, and the proof that the liquors sold were of the quality charged in the information, although designated by the labels on the bottles as something else. As we have said, it is clear that the labels were intended to deceive and did not honestly state the contents of the bottles upon which they were pasted. The proof was beyond question that they contained, at least, a mixture of the kind of liquor charged, and that the liquor was intoxicating.

We are unable to detect any error in the trial which requires a reversal of the judgment of the district court, and it is therefore

AFFIRMED.